Mr. Belton C. Haig Sr.

67 Salmon Road

Landing New Jersey 07850

Beltonhaig1@gmail.com

(862)324-5838

May 5, 2025

CIVIL ACTION 18 Civ.  12370 (WJM)(MF)

The Honorable Judge William J. Martini,

United States District Judge

US District Court for District of N.J.

50 Walnut Street

Newark N.J. 07101

Dear Honorable Judge William J. Martini,

I am respectfully resubmitting this request for your reconsideration in the case of BELTON HAIG v. NATIONAL RAILROAD PASSENGER CORP. (AMTRAK).  I initially submitted my first request back in December 2024 via certified mail.  (I have included copies of certified proofs of receipt by the clerk's office.)  However, after waiting several months and not receiving a response I decided to reach out to the clerk's office via telephone on May 5th, 2025, to inquire on the status of my request.  I spoke to a Mr. (Peter) who informed me that unfortunately he did not have my request on the docket and encouraged me to resend the request again because the clerk's office will only hold on to mail for three months before disposing of it.  He also suggested I follow up within a few weeks after I submit this new request for future reference.  So I am once again sending the ORIGINAL request for reconsideration out to your honor for your review.

Thank you for your time and consideration

Respectfully,

Belton C. Haig Sr.

Belton C. Haig Sr.



**USPS TRACKING #**



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 9066 4122 6736 06

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

BELTON C. HAIG SR.
64 SALMON ROAD
LANDING, NJ 07850

## Certified Mail service provides the following benefits:

◻ A receipt (this portion of the Certified Mail label).
◻ A unique identifier for your mailpiece.
◻ Electronic verification of delivery or attempted delivery.
◻ A record of delivery (including the recipient's signature) that is retained by the Postal Service™ for a specified period.

**Important Reminders:**

◻ You may purchase Certified Mail service with First-Class Mail®, First-Class Package Service®, or Priority Mail® service.
◻ Certified Mail service is *not* available for international mail.
◻ Insurance coverage is *not* available for purchase with Certified Mail service. However, the purchase of Certified Mail service does not change the insurance coverage automatically included with certain Priority Mail items.
◻ For an additional fee, and with a proper endorsement on the mailpiece, you may request the following services:
  - Return receipt service, which provides a record of delivery (including the recipient's signature). You can request a hardcopy return receipt or an electronic version. For a hardcopy return receipt, complete PS Form 3811, *Domestic Return Receipt;* attach PS Form 3811 to your mailpiece;

for an electronic return receipt, see a retail associate for assistance. To receive a duplicate return receipt for no additional fee, present this USPS®-postmarked Certified Mail receipt to the retail associate.
  - Restricted delivery service, which provides delivery to the addressee specified by name, or to the addressee's authorized agent.
  - Adult signature service, which requires the signee to be at least 21 years of age (not available at retail).
  - Adult signature restricted delivery service, which requires the signee to be at least 21 years of age and provides delivery to the addressee specified by name, or to the addressee's authorized agent (not available at retail).
◻ To ensure that your Certified Mail receipt is accepted as legal proof of mailing, it should bear a USPS postmark. If you would like a postmark on this Certified Mail receipt, present your Certified Mail item at a Post Office™ for postmarking. If you don't need a postmark on this Certified Mail receipt, detach the barcoded portion of this label, affix it to the mailpiece, apply appropriate postage, and deposit the mailpiece.

**IMPORTANT: Save this receipt for your records.**

PS Form 3800, January 2023 (Reverse) PSN 7530-02-000-9047



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

US DISTRICT CRT FOR DIST. OF NJ
CLERKS OFFICE RM 4015
50 WALNUT ST.
NEWARK, NJ 07102

9590 9402 9066 4122 6736 06

2. Article Number (Transfer from service label)

9589 0710 5270 0146 8138 51

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ◻ Agent   ◻ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ◻ Yes
If YES, enter delivery address below:   ◻ No

2024 DEC

3. Service Type
◻ Adult Signature
◻ Adult Signature Restricted Delivery
◻ Certified Mail®
◻ Certified Mail Restricted Delivery
◻ Collect on Delivery
◻ Collect on Delivery Restricted Delivery
◻ Insured Mail
◻ Insured Mail Restricted Delivery

◻ Priority Mail Express®
◻ Registered Mail™
◻ Registered Mail Restricted Delivery
◻ Signature Confirmation™
◻ Signature Confirmation Restricted Delivery

Domestic Return Receipt

## U.S. Postal Service
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

Newark, NJ 07102
Newark, NJ 07101

| Certified Mail Fee | $4.85 | | 0931 |
| | $4.85    $4.10 | | 09301 |
| | | | 01 |

Extra Services & Fees (check box, add fee as appropriate)
◻ Return Receipt (hardcopy)         $ _____
◻ Return Receipt (electronic)       $ $0.00
◻ Certified Mail Restricted Delivery $ $0.00
◻ Adult Signature Required          $ $0.00
◻ Adult Signature Restricted Delivery $ $0.00

Postmark Here   DEC 2024

Postage   $4.61
$9.65

Total Postage and Fees
$3.50
$18.60   12/05/2024
12/05/2024

Sent To  US DISTRICT CT FOR DISTRICT OF NJ
Street and Apt. No., or PO Box No.  50 WALNUT ST RM 4015 / CLERKS OFFICE
City, State, ZIP+4®  NEWARK, NJ 07101

PS Form 3800, January 2023   See Reverse for Instructions

Mr. Belton C. Haig Sr.

67 Salmon Road

Landing New Jersey 07850

Beltonhaig1@gmail.com

(862)324-5838

December 2nd, 2024

CIVIL ACTION 18 Civ. 12370 (WJM)(MF)


The Honorable Judge William J. Martini,

United States District Judge

US District Court for District of N.J.

50 Walnut Street

Newark N.J. 07101


Dear Honorable Judge William J. Martini,

I am writing to respectfully request you reconsider your decision in the case of BELTON HAIG v. NATIONAL RAILROAD PASSENGER CORP. (AMTRAK) as I believe there were significant errors in the interpretation of evidence regarding my lawsuit. It has recently come to light with newly discovered evidence that two individuals Mr. Edward Belenger and Mr. Leroy Kelleyll who were hired on behalf of my employers as private investigators to follow me around, stalk, harass and exacerbate my mental disability would give false declarations both at each of their depositions and at trial committing material perjury and legal fraud during these official proceedings by deliberately and maliciously lying under oath to damage my credibility and ultimately influence your honor and the juror's decision on the monetary damages all felt I were intitled to receive. On two separate occasions both individuals perpetrated unreasonable intrusion upon seclusion and false light using fictitious identification and subterfuge to gain entry into a private facility to illegally video record me without my consent or that of the facility where I had a reasonable expectation of privacy. This is likely also a violation of HIPPA law that these individuals illegally captured and disseminated images of me without my consent throughout periods of my medical recovery. During depositions and at trial, misleading statements and illegally obtained video recordings were used to negatively impact the juror's decision. These acts of intrusion were a violation of (NJLAD) & ADA, criminally

unlawful and a violation of the facility's policies. I subsequently filed police report(s) and brought this intrusion to the attention to the general manager of the facility where the invasion of privacy occurred providing the names of both individuals. After doing some investigating and running each of their names through company database, the manager informed me that not only were they in violation of company policy, but they have never been members of that club location or the franchise as a whole. Yet both lied under oath giving declarations that they were purported members knowing full well they weren't then or ever. Because of this deceitful conduct on the part of both individuals whereby NJ Rev Stat § 2C:28-1 (2023)-Perjury  NJ Rev Stat § 2C:12-10 (2023)-Stalking, NJ Rev Stat § 2C:33-4 (2023)-Harassment.  NJ Rev Stat § 2C:28-2 (2023)-False swearing. Further, neither of the two individuals retracted their perjurious statements at any time during any of these official proceedings. Under the direction of my employers, these two individuals, the defense lawyers and my employer committed intentional legal fraud by way of deception and extreme reckless disregard to gain an unfair advantage and deprive me of my legal right to a fair trial which has caused me irreparable harm, severe economic loss and has over exacerbated my anxiety, mental disorder, PTSD and physical disabilities which is why I am seeking restitution of no less than the original settlement offer of 850k from my employers plus additional monetary damages for these egregious violations of misconduct. Although I first informed the attorney Mr. Marc Wietzke who represented me at trial about this illegal activity on May 20, 2024, he chose to do absolutely nothing which is why I filed a grievance of legal malpractice against him with the Attorney Ethics Committee and proceeded without him. I respectfully request your honor forward these findings of deliberate deception to the prosecutor to have criminal charges brought not only on the two individuals, but all who were complicit in this malfeasance committed against me during these unfair legal proceedings which have caused mental and physical anguish and my family and I significant financial hardships.


Thank you for your time and consideration

Respectfully,

Belton C. Haig Sr.

Belton C. Haig Sr.


**Please find all necessary documentation attached to support my request**



**VA** | **U.S. Department of Veterans Affairs**

New York/New Jersey VA Health Care Network
VA New Jersey Health Care System
385 Tremont Avenue | East Orange, NJ 07018
973-676-1000

151 Knollcroft Road | Lyons, NJ 07939
908-647-0180

www.newjersey.va.gov

DATE: 11/27/24

MR. HAIG BELTON

To whom it may concern.

This letter is to certify that Mr. Haig Belton is currently in treatment at the VA East Orange VA Hospital and has been under my care since February 2015.

Mr. Haig is diagnosed with Major Depressive Disorder & receives VA disability for the same.

He describes mood as mostly dysphoric with anhedonia, experiences some level of anxiety on a daily basis, panic symptoms as well and worse in social situations, irritability and decreased frustration tolerance.

He has difficulty maintaining focus and concentration, difficulty completing simple tasks and making task related decisions.

Feelings of guilt and shame.

Chronic sleep disturbance, fragmented sleep also nightmares.

Feels tired and fatigued during the day.

Appetite is erratic with significant fluctuations in weight.

Paranoia over the past year believing that he is being watched & followed.

The above noted symptoms significantly affect his functioning requiring medication adjustments over the past year.

In my opinion, Mr. Haig has been unable to resume any type of gainful employment due to his physical and mental impairments.

Mr. Haig's symptoms can be treated over time; however, the symptoms and effects of treatment appear to be permanent in nature.

Sincerely,

Dr. Nadia Matin, MD.

*Nadia Matin*

**VA New Jersey Health Care System**
**Department of Veterans Affairs**
**Morristown CBOC**
540 West Hanover Avenue
2nd Floor – Suite #2C
Morristown, NJ 07960
Phone: 973-539-9791 ext 268424 / 268425
Fax:   973-539-9242



May 15, 2024

To whom it may concern,

Member are allowed to Vido tape themselves they are not allowed to video tape other people. That the time of this our policy was no videotaping allowed no matter what, members could not film themselves or anyone else. At that time, they would have been in violation of the policy in had at the time of the incident. That would mean that Mr. Edward Belenger and Mr. Leroy Kelley II were in violation of this policy. We can't provide information on Mr. Edward Belenger and Mr. Leroy Kelley II for their safety, but I did look to see if they ever had a membership or even a day pass with the names that you have provided. They have not had an account or used a day pass with the names provided. They do not pop in our system as ever having an account with this club or our Franchise group. They could have used a different name when signing up or could have requested a day pass from online with a name that was not provided here. Any additional information you require of me moving forward please let me know.



**Michelle Reid**

**General Manager**

**P: (862) 244-4327**

**Planet Fitness Succasunna**

275 Route 10 East

Succasunna NJ, 7256

planetfitness.com



*Michelle Reid*

*General Manager*

PLANET FITNESS | HOME *of the* JUDGEMENT FREE ZONE

275 Route 10 East | Succasunna, NJ 7256

E: succasunna_nj@planetfitness.com

P: 862.244.4327

planetfitness.com

 Gmail

Belton Haig <beltonhaig1@gmail.com>

# PLANET FITNESS MEMBERS EDWARD BELENGER & LEROY KELLY II VIOLATING PLANET FITNESS MOBILE DEVICE USE POLICY AS WELL AS NEW JERSEY RIGHT TO PRIVACY LAWS

4 messages

**Belton Haig** <beltonhaig1@gmail.com>
To: succasunna.nj@planetfitness.com

Wed, Nov 22, 2023 at 4:47 PM

Good Day Ms. Reid,

As per our initial brief conversation on the evening of Friday November 18th and then again on Tuesday November 21rst when I showed you video footage of the violation(s). I have identified the individuals in question as Mr. Edward Belenger and Mr. Leroy Kelley II. Both individuals have claimed to be working under the employ of an Investigations company called Veracity Research Company (formerly Prime Source Investigations) at the time of these planet fitness policy violations and NJ Invasion of Privacy Laws by their own testimony. I have already filed a police report with the Roxbury Township police Department and soon will be seeking litigation against these individuals and their employer for the continued mental distress, harassment, unreasonable intrusion and would like very much if you would hold these individuals accountable by revoking their membership privileges. I was severely injured on the job back in 2016 which required me to undergo 3 seperate major surgeries in 2017. I am now 100% disabled and unable to work and although I will never be the same individual physically or mentally I once wasl have expectations of privacy and seclusion during my road to recovery when I use your facility I reserve the right to privacy inside your facility and that right was deliberately violated by these two individuals and their employer who not only knew full well they were filming me inside this private facility, but who knowingly and purposely violated my rights and your policies. Any additional information you require of me moving forward please let me know. I would also like to know what steps to take in obtaining these two individuals membership information for future litigation purposes. This is a matter that I hope you take as seriously as I do and any additional verbiage you wish to add will be very much appreciated.

Thank You,

Valued Member
Belton C. Haig Sr.

**Belton Haig** <beltonhaig1@gmail.com>
To: haigbeltonsr55@gmail.com

Wed, Nov 22, 2023 at 4:47 PM

-------- Forwarded message --------
From: **Belton Haig** <beltonhaig1@gmail.com>
Date: Wed, Nov 22, 2023 at 4:47 PM
Subject: PLANET FITNESS MEMBERS EDWARD BELENGER & LEROY KELLY II VIOLATING PLANET FITNESS MOBILE DEVICE USE POLICY AS WELL AS NEW JERSEY RIGHT TO PRIVACY LAWS
To: <succasunna.nj@planetfitness.com>

Good Day Ms. Reid,

As per our initial brief conversation on the evening of Friday November 18th and then again on Tuesday November 21rst when I showed you video footage of the violation(s). I have identified the individuals in question as Mr. Edward Belenger and Mr. Leroy Kelley II. Both individuals have claimed to be working under the employ of an Investigations company called Veracity Research Company (formerly Prime Source Investigations) at the time of these planet fitness policy violations and NJ Invasion of Privacy Laws by their own testimony. I have already filed a police report with the Roxbury Township police Department and soon will be seeking litigation against these individuals and their employer for the continued mental distress, harassment, unreasonable intrusion and would like very much if you would hold these individuals accountable by revoking their membership privileges. I was severely injured on the job back in 2016 which required me to undergo 3 seperate major surgeries in 2017. I am now 100% disabled and unable to work and although I

will never be the same individual physically or mentally I once wasI have expectations of privacy and seclusion during my road to recovery when I use your facility  I reserve the right to privacy inside your facility and that right was deliberately violated by these two individuals and their employer who not only knew full well they were filming me inside this private facility, but  who knowingly and purposely violated my rights and your policies.   Any additional information you require of me moving forward please let me know.  I would also like to know what steps to take in obtaining these two individuals membership information for future litigation purposes. This is a matter that I hope you take as seriously as I do and any additional verbiage you wish to add will be very much appreciated.


Thank You,

Valued Member
Belton C. Haig Sr.

---

Planet Fitness - Succasunna <succasunna.nj@planetfitness.com>
To: Belton Haig <beltonhaig1@gmail.com>                                              Mon, Feb 5, 2024 at 2:20 PM


Hello Belton,


Sorry for the Delay. I was out sick on Friday.


As per over conversations in person. Member are allowed to Vido themselves they are not allowed to video tape other people.  That the time of this our policy was no videotaping allowed not matter what, members could not film themselves or anyone else. That would mean that Mr. Edward Belenger and Mr. Leroy Kelley II were in violation of this policy. We can't provide information on Mr. Edward Belenger and Mr. Leroy Kelley II for their safety but I did look to see if they ever had a membership or even a day pass with the names that you have provided. They have not had an account or used a day pass with the names provided. They do not pop in our system as ever having an account with this club or our Franchise group. They could have used a different name when signing up or could have requested a day pass from online with a name that was not provided here. Any additional information you require of me moving forward please let me know




**Michelle Reid**

**General Manager**

**P:** (862) 244-4327

**Planet Fitness Succasunna**

275 Route 10 East

Succasunna NJ, 7256

planetfitness.com


**From:** Belton Haig <beltonhaig1@gmail.com>
**Sent:** Wednesday, November 22, 2023 4:47 PM
**To:** succasunna.nj@planetfitness.com

11/11/24, 11:00 AM          Gmail – PLANET FITNESS MEMBERS EDWARD BELENGER & LEROY KELLY II VIOLATING PLANET FITNESS MOBILE DEVI...

Franchise group. They could have used a different name when signing up or could have requested a day pass from online with a name that was not provided here. Any additional information you require of me moving forward please let me know



**Michelle Reid**

**General Manager**

**P:** (862) 244-4327

**Planet Fitness Succasunna**

275 Route 10 East

Succasunna NJ, 7256

planetfitness.com

**From:** Belton Haig <beltonhaig1@gmail.com>
**Sent:** Wednesday, November 22, 2023 4:47 PM
**To:** succasunna.nj@planetfitness.com
**Subject:** PLANET FITNESS MEMBERS EDWARD BELENGER & LEROY KELLY II VIOLATING PLANET FITNESS MOBILE DEVICE USE POLICY AS WELL AS NEW JERSEY RIGHT TO PRIVACY LAWS

Good Day Ms. Reid,

[Quoted text hidden]

---

**Belton Haig** <beltonhaig1@gmail.com>
To: Planet Fitness - Succasunna <succasunna.nj@planetfitness.com>                    Mon, May 13, 2024 at 1:05 PM

Good Afternoon Ms. Reid,

I am contacting you to request an actual accounting of your findings, detailed in this email on be sent to me in an official PLANET FITNESS letter(head). If you prefer I can pick the letter up in person at the facility or you can mail it to my home address.....67 Salmon Road Landing NJ 07850. I require this in letter form for upcoming legal proceedings against these individual and the company they work for.  This request is time sensitive so the sooner you can get the letter request to me the better.  Please feel free to contact me if you have any questions or concerns on my request.

Thank you in advance for your assistance in this matter.

Respectfully,

Mr. Belton C. Haig Sr.
[Quoted text hidden]



## ROXBURY TWP POLICE DEPARTMENT
### OPERATIONS REPORT

| 1. ORI # | 2. Incident #(P#) | 3. PD Case # | 4. Report Date & Time | 5. Agency Incident/Actual CFS Type |
|---|---|---|---|---|
| NJ0143600 | | 2023-39911 | 11/21/2023 11:29 | ASSIST CITIZEN |

| 6. Party Type | 7. Name | 7A. DOB |
|---|---|---|
| CONTACT | HAIG, BENTON C | 11/04/1968 |

| 8. Address (Street, Bldg /Apt/Suite, City, State, Zip) | 8A. Phone # |
|---|---|
| 67 SALMON RD, LANDING, NJ 07850-1621 | HM:862-432-6243 W:732-558-0053 C:862-324-5838 |

| 9. Location of Incident | 9A. Municipality | 9B. County |
|---|---|---|
| 1715 HIGHWAY 46, LEDGEWOOD, NJ 07852 | ROXBURY TWP | MORRIS |

| 10. Vehicle Information | | | | | | |
|---|---|---|---|---|---|---|
| Make | Model | Plate # | State | Year | Color | VIN # |

| Code | Name | Address | Age | Sex | Race | Eth | DOB |
|---|---|---|---|---|---|---|---|

**11. Narrative**

I responded to police headquarters lobby for the report of a walk-in. Upon arrival, I made contact with Belton Haig.

Belton advised he works out at Planet Fitness in Succasunna and there have been people who are taking video recordings of him while working out to use as evidence against him in a lawsuit he is involved in with his current employer. Belton informed me he does not know who is recording him as he finds out after the fact. Belton further informed me he has not given his consent for anyone to record him while working out and has a reasonable expectation of privacy due to paying membership dues to Planet Fitness. Belton provided me with Planet Fitness's policy on mobile device usage while at the gym, which states "photographs or video should never include anyone who has not given their prior permission to appear in such images." I advised Belton I would document the incident. I further advised Belton if he was aware he was being recorded while working out, to bring the matter to Planet Fitness staff and management, so they are aware of the ongoing issue as it violates one of their policies, which he understood.

On 11/27/2023, I spoke with Belton who advised he was aware of the two individuals who had been filming him at Planet Fitness, identified as Edward Bellenger and Leroy Kelly. Belton informed me he was aware of who they were because they had admitted to filming him at Planet Fitness. I then spoke with Michelle Reid, Planet Fitness Succasunna's General Manager. Michelle informed me due to Planet Fitness being franchised, she was unable to see any information on the two members. Michelle advised Planet Fitness has a "Black Card" membership, which would allow someone from a different franchise, possibly out-of-state, gain access to Planet Fitness, but would not be able to see any information on them besides their first and last name.

End of report.

Case No. 2023-39911

| Print Officer Name | Badge No. | Page No. | Report Date | Reviewed By |
|---|---|---|---|---|
| PTL. STEPHEN SATMARIA | 238 | 1 of 1 | 11/29/2023 | SGT JOHN SYLVESTER |
| Signature | | | | Supervisor Signature |

# MORRIS TWP POLICE DEPARTMENT
## INVESTIGATION REPORT

| 1. Department MORRIS TWP POLICE DEPARTMENT | 2. Mun. Code 1422 | 3. Phone Number 973-539-0777 | 4. CAD Incident# P233320483 | 5. Other Agency Case # | | 6. Department Case Number 2023-47157 |
|---|---|---|---|---|---|---|

| 7. Crime / Incident POLICE INFORMATION | 8. NJS | 9. Victim/s | | | | 10. SSN |
|---|---|---|---|---|---|---|
| | | 11. Age | 12 DOB | 13. Sex | 14. Race | 15. Eth |

| DATE AND TIME | 16. Between ☐ | 17. Hour 09:38 | 18. Day TUE | 19. Mo. 11 | 20. Date 28 | 21. Yr. 2023 | 22. Victim(s) Home Address | 23. Home Phone / Cellular / |
|---|---|---|---|---|---|---|---|---|

| 24. Crime/Incident Location 540 W HANOVER AVE, MORRISTOWN, NJ 07960 | 25. Victim's Employer | 26. Phone # |
|---|---|---|

| 27. Municipality MORRIS TWP | 28. County MORRIS | 29. Code 1422 | 30. Person Reporting Crime/Incident HAIG, BENTON C | 31. Date and Time 11/28/2023 09:38 |
|---|---|---|---|---|

| 32. Type of Premises HOSPITAL PARKING LOT. | 33. Weapons / Tools | 34. Address 67 SALMON RD, LANDING, NJ 07850-1621 | 35. Home Phone / Cellular 862-432-6243 / 862-324-5838 |
|---|---|---|---|

**36. Modus Operandi**
Police Information- Male stated a surveillance company is following him.

| 37. Vehicle | | 38. Year | 39. Make | 40. Model | | 41. Body Type |
|---|---|---|---|---|---|---|
| 42. Color | | 43. Registered Number & State | | 44. Serial Number or Identification | | 45. Towing Company |
| Value of Stolen/Recovered Property | 46. Currency | 47. Jewelry | 48. Furs | 49. Clothing | 50. Auto | 51. Misc. |
| 52. Total Value Stolen | 53. Total Value Recovered | | 54. Teletype Alarm | 55. Technical Services | 56. Technician-Agency | |

| 57. Weather CLEAR | 58. NIC | 59. Assisting Agencies |
|---|---|---|

| 60. No. of Accused 0 | 61. Adult 0 | 62. Juvenile 0 | 63. Status Crime Exceptionally Cleared | 64. Status Case Closed | 65. UCR Status Month Yr. | 66. Date Cleared 11/28/2023 |
|---|---|---|---|---|---|---|

| 67. Code | 68. Name | 69. Address | 70. Age | 71. Sex | 72. Race | 73. Eth | 74. DOB | 75. HM | 76. WK | 77. C |
|---|---|---|---|---|---|---|---|---|---|---|
| [CONTACT] | PRIME SOURCE/VRC INVESTIGATIONS - | 532 FELLOWSHIP RD, STE B, MOUNT LAUREL, NJ 08054 - - - - - - - - - | | | | | | -WK-800-654-2185 - | | C- |
| 609-386-7577 - | | | | | | | | | | |

**78. Narrative**

On November 28th, 2023, at approximately 0938 hours, I made contact with Benton C Haig at police headquarters. Benton wanted to document an incident at the VA Hospital at 540 W Hanover Ave. Benton stated that his employee AMTRAK hired PRIME SOURCE/VRC INVESTIGATIONS, which is a surveillance company, to follow him and videotape him. Benton stated that he's a disabled veteran. Benton also said that he was injured at work and is currently out on disability. Benton noted that he has filed a report at Roxbury Police Department, which is his local police department. Benton stated that his attorney advised him that he had received several videos of Benton at several locations taken by PRIME SOURCE/VRC INVESTIGATIONS.

Benton stated that on February 23rd, 2023, he noticed a vehicle following him from his residence in Landing, NJ, to the VA Hospital at 540 W Hanover Ave. Benton stated that the vehicle parked near his vehicle and that he felt that the private investigator was violating his rights of privacy. I advised Benton that private investigators are allowed to be in public areas, which does not mean they are violating his civil right to privacy. I asked Benton if the company had trespassed on his property, and he said they had not. Benton stated that the VA hospital is a private hospital, which should be considered. I advised Benton that the 540 W Hanover Ave area is county property and is open to the public.

Benton stated that he just wanted to document this incident.

Benton completed a citizen statement form, which has been scanned into RMS. Please see Benton's statement for further details.

BWC was activated during this event.

| Print Rank/OFC Name OFF. MIGUEL PALACIO | Badge No. 172 | Page No. 1 of 1 | Report Date 12/01/2023 | Reviewed By: SGT RYAN FARRELL |
|---|---|---|---|---|
| Signature | | | | Supervisor Signature |



# ROXBURY TWP POLICE DEPARTMENT
## OPERATIONS REPORT

| 1. ORI # NJ0143600 | 2. Incident #(P#) | 3. PD Case # 2024-16635 | 4. Report Date & Time 05/24/2024 15:28 | 5. Agency Incident/Actual CFS Type SUSPICIOUS ACTIVITY | |
|---|---|---|---|---|---|
| 6. Party Type CONTACT | | 7. Name HAIG, BENTON C | | | 7A. DOB 11/04/1968 |

| 8. Address (Street, Bldg /Apt/Suite, City, State, Zip) 67 SALMON RD, LANDING, NJ 07850-1621 | 8A. Phone # HM:862-432-6243 W:732-558-0053 C:862-324-5838 | |
|---|---|---|
| 9. Location of Incident 67 SALMON RD, LANDING, NJ 07850 | 9A. Municipality ROXBURY TWP | 9B. County MORRIS |

| 10. Vehicle Information | | | | | | | |
|---|---|---|---|---|---|---|---|
| Make | Model | | Plate # | State | Year | Color | VIN # |
| Code | Name | Address | | | | | |
| | | | Age | Sex | Race | Eth | DOB |

**11. Narrative**

On May 24, 2024, I spoke with Benton Haig in the lobby of Police Headquarters. Haig wished to document a suspicious incident that has been ongoing and likely involves his current employer, Amtrak.

In short, Benton advised that in December of 2022, he and other co-workers were offered a civil settlement for a work-related claim. Benton stated he was the only one who rejected the offer and feels that he has been harassed by the company since then. In September of 2023, Haig advised he found an Apple air tag on one of his vehicles which he did not authorize and was not aware of. Although he found it suspicious at the time, he did not report it. Two days ago, he located another Apple air tag on a different vehicle while he was retrieving the mail at his home.

Haig wanted the incident documented because it is his belief Amtrak is operating outside of the legal boundaries for his particular case.

Nothing further.

Case No. 2024-16635

| Print Officer Name LT STEPHEN CATALANO | Badge No. 177 | Page No. 1 Of 1 | Report Date 05/24/2024 | Reviewed By LT STEPHEN CATALANO |
|---|---|---|---|---|
| Signature | | | | Supervisor Signature |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - -

BELTON HAIG,                    :    CIVIL ACTION
                               :
          Plaintiff,           :
                               :
                               :
     VS.                       :
                               :
                               :
NATIONAL RAILROAD              :
PASSENGER CORP.,               :
                               :
          Defendant.           :    18 Civ. 12370 (WJM) (MF)

- - -

Remote video conference deposition of
EDWARD BELENGUER, taken on Thursday, July 7, 2022,
beginning at approximately 4:12 p.m., before Robin
Frattali, Professional Court Reporter and Notary
Public.

- - -

SUMMIT COURT REPORTING, INC.
Certified Court Reporters and Videographers
(215) 985-2400 * (800) 447-8648 * (609) 567-3315
www.summitreporting.com

Page 2

**EDWARD BELENGUER**

```
 1    ** ALL ATTENDEES PRESENT VIA VIDEO CONFERENCE **

 2

 3    APPEARANCES:

 4

 5    FLYNN & WIETZKE, P.C.
      BY:  MARC T. WIETZKE, ESQUIRE
 6    1205 Franklin Avenue
      Suite 370
 7    Garden City, New York  11530
      (516) 877-1234
 8    mwietzke@felaattorney.com
      Counsel for Plaintiff
 9

10

      LANDMAN, CORSI, BALLAINE & FORD, P.C.
11    BY:  ALEXANDER MARCUS, ESQUIRE
      One Gateway Center
12    22nd Floor
      Newark, New Jersey  07102
13    (973) 623-2700
      amarcus@lcbf.com
14    Counsel for Defendant

15

16    ALSO PRESENT:

17

18    BELTON CLAY HAIG, SR.

19

20    DANIEL HORNUNG
      Video Technician
21    Summit Court Reporting

22

23

24

25
```

**EDWARD BELENGUER**

1  for.

2         And were there times when you

3  observed Mr. Haig, meaning you could see him, and

4  your recording device was not recording?

5      A.    Yes.

6      Q.    And is it fair to say that you decide

7  when the recording device is turned on and when to

8  stop the recording on the device?

9      A.    Yes.

10     Q.    Did you perform all of your

11  surveillance from inside of a vehicle?

12     A.    No.

13     Q.    So then did you follow Mr. Haig into

14  any location?

15     A.    Yes.

16     Q.    Which locations did you follow him

17  into?

18     A.    Planet Fitness, Lowe's and into a

19  Walmart.

20     Q.    Now, I'm just going to break out each

21  one of those, but let's start with the Planet

22  Fitness.  Are you personally a member of Planet

23  Fitness?

24     A.    Yes.

25     Q.    All right.  When did you first join?

**EDWARD BELENGUER**

1      A.     Around 2009, after graduating college.

2      Q.     Got it.

3             And did you -- when you

4   followed Mr. Haig into Planet Fitness, it was

5   solely for the purpose of doing the surveillance

6   work, correct?

7      A.     Correct.

8      Q.     In other words, you -- it wasn't like

9   you were walking in to work out and you were, Hey,

10  I know that guy, correct?

11     A.     Correct.

12     Q.     All right.  And in -- when you went

13  into Planet Fitness, did you advise the -- any of

14  the folks at the gym that you were there for the

15  purpose of collecting surveillance?

16     A.     No.

17     Q.     When you would -- at any point while

18  you were in there, did you seek their permission

19  to conduct surveillance inside the Planet Fitness?

20     A.     No.

21     Q.     While you were in the Planet Fitness,

22  were there times when you saw Mr. Haig but were

23  not able to record him?

24     A.     Yes.

25     Q.     So I'm going to share my screen to

**EDWARD BELENGUER**

1      Q.    And who is he?

2      A.    He was a part owner of Prime Source.

3   I believe he's retired now.

4      Q.    Have you ever spoken with -- I'm going

5   to give you four names -- but no, I'm going to

6   give you three names, and the question is have you

7   ever spoken to any of them about Mr. Haig's claim,

8   and then you can tell me the details on who.

9               Austin Lindsay, Le'Roy Kelly

10  and Colin Burke, have you ever spoken to any of

11  the three of them about Mr. Haig's claim?

12     A.    Yes.

13     Q.    Who?

14     A.    Colin.

15     Q.    Okay.  And what was the nature of the

16  conversation you had with Colin Burke about

17  Mr. Haig's claim?

18     A.    He called me and told me about his

19  prior surveillance effort, about how he followed

20  him to a Planet Fitness in Roxbury but he didn't

21  get out of his car.

22     Q.    Got it.

23              And is that what prompted you

24  on the 28th to use your own Planet Fitness

25  membership to get video?

**EDWARD BELENGUER**

1      A.      No.

2      Q.      All right.  So did you say anything

3   back to Mr. Burke when he told you that he had

4   followed -- that he followed Mr. Haig to a Planet

5   Fitness?

6      A.      No, just normal discussion, that it

7   was odd that he didn't get out of his car.

8      Q.      Oh, you mean Mr. Haig didn't get out

9   of his car, not that Mr. Burke didn't get out of

10  his car.

11     A.      Correct.

12     Q.      Okay.  I'm sorry.  You said that he

13  followed him and he didn't get out of his car.  I

14  thought we were talking about the same he.  Okay.

15              Okay.  Other than Mr. Burke,

16  have you ever spoken to anybody about Mr. -- well,

17  I shouldn't say that.  Other than receiving the

18  claim to do an investigation on, counsel, meaning

19  Mr. Marcus, and Mr. Burke, have you ever spoken to

20  anybody about Mr. Haig's claim?

21     A.      You know, I may.  I don't exactly

22  recall.  I believe I spoke to Le'Roy about setting

23  up at the Planet Fitness that I got him to the one

24  day in Ledgewood.

25     Q.      For each day that you performed

**EDWARD BELENGUER**

1      Q.    Okay.  And then I guess you followed

2  him a little while later.  You were at a -- it

3  looks like a UPS store or something?

4      A.    Correct.

5      Q.    Got it.

6            At some point you -- I think

7  you showed him carrying a -- oh, there we go.  He

8  had like a manila envelope under his arm.  Here we

9  are.  I'm at two-minutes-seven seconds on the

10  video, which is -- on February 5 of '22 it's at

11  11:17 a.m. and 12 seconds.

12            You have no idea how heavy that

13  envelope is, correct?

14      A.    Correct.

15      Q.    All right.  And then later that day,

16  about a half hour later it looks like, this is

17  where you followed him into the Planet Fitness,

18  correct?

19      A.    Yes.

20      Q.    All right.  Now, the entire time that

21  you were following Mr. Haig, he was using

22  machines, correct?

23      A.    May I look at my report?  I believe I

24  documented all the exercises he did.

25      Q.    Sure.

**LE'ROY KELLY, II**

1    A.    Correct.

2    Q.    All right.  So on the day that you did

3  record video, were you in one place or more than

4  one place to take the video?

5    A.    I took the video in one place.

6    Q.    And where was that?

7    A.    At the Planet Fitness.

8    Q.    Okay.  Are you a member of Planet

9  Fitness?

10   A.    Yes.

11   Q.    Okay.  Did you use your own personal

12 Planet Fitness membership to get into the gym?

13   A.    Yes.

14   Q.    Did you mention to anybody at Planet

15 Fitness that you were going to be using the

16 facility for the purpose of surveillance?

17   A.    No.

18   Q.    Do you know if, under the terms of the

19 agreement, you were required to do so before

20 taking surveillance of another patron inside the

21 gym?

22   A.    I was not aware.

23   Q.    Did you sign a contract to get your

24 application -- to get your membership to Planet

25 Fitness?

2D

LE'ROY KELLY, II

Page 3

1                            I N D E X

2                              - - -

3    WITNESS:                                        PAGE

4    LE'ROY KELLY, II

5    EXAMINATION

6    By Mr. Wietzke                                    5

7

8

9                          EXHIBITS

10

11   EXHIBIT NO.          DESCRIPTION        PAGE FIRST
                                             REFERENCED

12   Prime-4A       Prime Source Investigations    53
13                  Invoice #20056, March 17,
                    2022

14   Prime-4B       Prime Source Investigations    26
15                  Confidential Investigation
                    Report, Invoice #20056

16   Prime-4C       February 13, 2022 video        41

17   Prime-5B       Prime Source Investigations    53
18                  Confidential Investigation
                    Report, Invoice #20172

19

20

21

22

23

24

25

2C

LE'ROY KELLY, II

```
 1      ** ALL ATTENDEES PRESENT VIA VIDEO CONFERENCE **

 2

 3      APPEARANCES:

 4

 5      FLYNN & WIETZKE, P.C.
        BY:  MARC T. WIETZKE, ESQUIRE
 6      1205 Franklin Avenue
        Suite 370
 7      Garden City, New York  11530
        (516) 877-1234
 8      mwietzke@felaattorney.com
        Counsel for Plaintiff
 9

10

11      LANDMAN, CORSI, BALLAINE & FORD, P.C.
        BY:  ALEXANDER MARCUS, ESQUIRE
        One Gateway Center
12      22nd Floor
        Newark, New Jersey  07102
13      (973) 623-2700
        amarcus@lcbf.com
14      Counsel for Defendant

15

16      ALSO PRESENT:

17

18      BELTON CLAY HAIG, SR.

19

20      DANIEL HORNUNG
        Video Technician
21      Summit Court Reporting

22

23

24

25
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - -

BELTON HAIG,                    :    CIVIL ACTION
                               :
          Plaintiff,           :
                               :
      VS.                      :
                               :
                               :
NATIONAL RAILROAD              :
PASSENGER CORP.,               :
                               :
          Defendant.           :    18 Civ. 12370 (WJM) (MF)

- - -

Remote video conference deposition of
LE'ROY KELLY, II, taken on Thursday, July 7, 2022,
beginning at approximately 3:00 p.m., before Robin
Frattali, Professional Court Reporter and Notary
Public.

- - -

SUMMIT COURT REPORTING, INC.
Certified Court Reporters and Videographers
(215) 985-2400 * (800) 447-8648 * (609) 567-3315
www.summitreporting.com

2A

1  you could?

2  A.  Correct.

3  Q.  So we'll never see whether there was actually somebody

4  spotting him.  Correct?

5  A.  Can you repeat the question?

6  Q.  We don't see on there whether or not there was somebody

7  spotting him on some of the weights.  Correct?

8  A.  Not on -- not on the video, no.

9  Q.  Okay.  You know what spotting is.  Right?

10  A.  Yes, I do.

11  Q.  Okay.  I just realized I used the term.

12       That's where somebody helps to be careful with the

13  weights, so that if there's any issues they can help.  Right?

14  A.  Correct.

15  Q.  All right.  And when we -- we saw that you were out there,

16  I think it was -- there were three days in a row where you had

17  him doing snow removal in his driveway yourself.  Correct?

18  A.  No.  That's not correct.  I believe I only had one day of

19  me personally for the snow clearing.

20  Q.  Oh, all right.

21  A.  I have the salting as well, too.  Salting.  And snow

22  clearing one day.

23  Q.  Got you.  Okay.

24       I thought we saw January 28th and January 29th, both

25  were snow removal, but the 28th had the salt as well.

BELENGUER - CROSS - WIETZKE                   378

1  A.   I'm not aware of that.

2  Q.   When the video was taken at the gym -- when you took that

3  video -- that video that you took, you weren't aware when you

4  took that that his physical therapist had actually told him to

5  do those exact exercises.  Were you?

6          MR. BONVENTRE:  Objection, your Honor.

7          THE WITNESS:  No.

8          MR. BONVENTRE:  There's no foundation for that.

9          THE COURT:  It's been asked and answered, but go

10  ahead.

11  BY MR. WIETZKE:

12  Q.   Were you made aware when you took those videos that his

13  doctors had told him to go to the gym?

14  A.   No.

15  Q.   And you never saw him doing free weights in any of those

16  videos, didn't you?  He did all machines, didn't he?

17  A.   Correct.

18  Q.   Now, when the -- when the clip jumps, that's because

19  you're moving from -- when I say "jump," I mean you can see

20  clearly one clip ended and another clip started.

21       That's because you're starting and stopping the video.

22  Correct?

23  A.   Correct.

24  Q.   All right.  And so you didn't take video the whole time

25  that he was under observation; you only took the pieces that

BELENGUER - CROSS - WIETZKE

1  A.    Not that I recall overhead, no.

2  Q.    Okay.  And now when Amtrak hired you or the lawyers for

3  Amtrak hired you -- first off, have you ever done work for the

4  law firm that is representing Amtrak in this case before?

5  A.    Not that I'm aware of, no.

6  Q.    Have you ever done any work on any Amtrak cases before?

7  A.    Without seeing files in front of me, I can't say for

8  certain.

9  Q.    Right.  Now, the -- they didn't give you any directions

10  on -- so that you would know what the limitations were that the

11  two orthopedic surgeons that this jury has already heard from

12  put on him.  Correct?

13  A.    No.

14  Q.    Okay.  And when you went to Planet Fitness, you knew that

15  you were actually doing something you had agreed not to do as a

16  Planet Fitness member?  Right?

17       I mean, you weren't supposed to take any video inside

18  that gym.  Were you?

19  A.    I'm not aware of that.

20  Q.    You're a Planet Fitness member.  That's how you got in.

21  Right?

22  A.    Correct.

23  Q.    Okay.  And the contract you signed with Planet Fitness to

24  become a member specifically said you agreed not to take any

25  video inside the gym.  Doesn't it?

1    shown, that could be shown if anyone wants it to be shown?

2    A.    Correct.

3    Q.    Okay.  Thank you very much, Mr. Belenguer.  I appreciate

4    it.

5    A.    Thank you.

6              THE COURT:  Any cross-examination?

7              MR. WIETZKE:  Yes, please, your Honor.

8                        CROSS-EXAMINATION

9    BY MR. WIETZKE:

10   Q.    Mr. Belenguer, you were given a briefing document, I

11   believe, before setting out to spy on Mr. Haig.  Right?

12   A.    Correct.  It's not a document.  It's an online page.

13   Q.    Fair enough.

14        And in that you were given, I think you said some --

15   some social media, some information about injury, vehicles,

16   residence, description, and a photo ID of some sort?

17   A.    Correct.

18   Q.    What were you told about the injuries?

19   A.    Without having it in front of me, I wouldn't know.  There

20   would be a section on the briefing that just states the injury.

21   Q.    As you sit here today, do you know what the injuries were?

22   A.    Without looking at it, I would -- I would say it was the

23   back.

24   Q.    Okay.  You didn't -- in those videos, he did nothing that

25   was overhead.  Correct?

1                          I N D E X

2

3    WITNESS                                   PAGE

4    KI SOO HWANG

5    BY MR. BONVENTRE                          328

6    BY MR. WIETZKE                            347

7

8    EDWARD BELENGUER

     BY MR. BONVENTRE                          358

9    BY MR. WIETZKE                            376

10                      EXHIBITS

11   NUMBER                    IN EVIDENCE

12   P-7                           327

13   P-9                           327

14   P-14                          327

15   P-18                          327

16   P-22                          327

17

18   D-52A                         362

19

20

21

22

23

24

25

```
1                 UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
2

3    ────────────────────────       CIVIL ACTION NUMBER:
     BELTON HAIG,
4                                    18 Civ. 12370
          Plaintiff,
5                                    TRIAL DAY 2
          v.
6
     NATIONAL RAILROAD PASSENGER
7    CORP.,

8         Defendant.

9    ────────────────────────

10        Martin Luther King Building & U.S. Courthouse
          50 Walnut Street
11        Newark, New Jersey 07101
          Wednesday, November 1, 2023
12        Commencing at 9:35 a.m.

13   B E F O R E:              THE HONORABLE WILLIAM J. MARTINI,
                               UNITED STATES DISTRICT JUDGE
14

15   A P P E A R A N C E S:

16        FLYNN & WIETZKE PC
          BY:  MARC T. WIETZKE, ESQUIRE
17        1205 Franklin Avenue - Suite 370
          Garden City, New York 11530
18        Counsel for Plaintiff

19        LANDMAN CORSI BALLAINE & FORD PC
          BY:  JOHN A. BONVENTRE, ESQUIRE
20             ALEXANDER MARCUS, ESQUIRE
          One Gateway Center - 4th Floor
21        Newark, New Jersey 07102
          Counsel for Defendant

22        MELISSA A. MORMILE, Official Court Reporter
              melissa_mormile@njd.uscourts.gov
23                    973-776-7710

24   Proceedings recorded by mechanical stenography; transcript
              produced by computer-aided transcription.
25
```

**EDWARD BELENGUER**

1      Q.    Got it.

2               Can you imagine it ever taking

3 you 40 minutes to find him inside that gym?

4      A.    No.

5      Q.    Okay.

6               MR. WIETZKE:  I have no further

7 questions at this time.  Thank you.

8               MR. MARCUS:  All right.  You're

9 all set.

10              - - -

11               (Whereupon, at 4:57 p.m., the

12 witness was excused and the deposition was

13 concluded.)

14              - - -

15

16

17

18

19

20

21

22

23

24

25

EDWARD BELENGUER

1      Q.    Okay.  And for -- he walked on the
2  treadmill, and you don't have video of that,
3  correct?
4      A.    Correct.
5      Q.    There was some pull-downs that he did
6  on a machine.  You don't have video of that,
7  correct?
8      A.    Correct.
9      Q.    Is there a reason you didn't -- I
10 thought you said your directive was to -- oh, I've
11 got to get that piece of paper -- was to -- oh,
12 objective was to document all activity, correct?
13     A.    Correct.
14     Q.    All right.  So walking on the
15 treadmill, pulling -- doing flat pull-downs, those
16 are -- that's activity that you were supposed to
17 document, correct?
18     A.    It's a -- you got to do it without
19 getting caught, though.  I know that he's in a
20 small, confined area.
21     Q.    So when you say "a small, confined
22 area," you're saying that gym is small?
23     A.    He moves to a lower workout area with
24 several machines.  This -- the lower area is a
25 very small area.

**EDWARD BELENGUER**

1    BY MR. WIETZKE:

2         Q.    All right.  So I did think of a couple

3    more.  I was scrolling back over my notes.

4                   Did you at any point observe

5    Mr. Haig wearing a back brace?

6         A.    I don't believe so.

7         Q.    Okay.  Do you know whether he had a

8    back brace on underneath the clothing that you saw

9    him wearing?

10        A.    No.

11        Q.    All right.  There were other exercises

12   that Mr. Haig performed that you did not record,

13   correct?

14        A.    I put them in the report, every

15   exercise he did.

16        Q.    But you didn't take video of every

17   exercise he did, did you?

18        A.    Correct.

19        Q.    In other words, there were a number of

20   times where he was stretching, correct?

21        A.    I don't recall that, no.

22        Q.    So he just went in -- he walked in and

23   went all to lifting on the machines?

24        A.    I only observed him lifting, not

25   stretching.

**EDWARD BELENGUER**

1    It looks like there was a blip, and I didn't know

2    what happened.  Is there any reason you didn't

3    take video of him getting situated on the bench or

4    of the times between exercises?

5         A.    Just because it's a busy gym, and I

6    didn't want to get caught filming anybody.  I was

7    trying to be discrete.

8         Q.    Got it.

9              Was there any video that you

10   took of Mr. Haig that you did not upload to Prime

11   Source?

12        A.    No.

13        Q.    All right.  Just give me a couple

14   minutes, and I may very well be done.

15              By the way, where are you?

16   Because it looks downright peaceful.

17        A.    I am in Bridgewater, New Jersey at my

18   house.

19        Q.    Yeah.  Well done.  All right.  So give

20   me a quick minute and I'll be right back.

21                  - - -

22              (Whereupon, a short recess was

23        taken, after which time the deposition

24        resumed.)

25                  - - -

**EDWARD BELENGUER**

1              Here, I'll put up on screen so
2    you don't -- well, unless yours is easier.  I
3    don't know.
4          A.    Correct, they are all machines.
5          Q.    All right.  And do you know whether or
6    not the -- Mr. Haig was told to use machines so
7    that it would control the movement and be safer in
8    light of his injuries?
9          A.    No.
10         Q.    These other folks that were captured
11   on video, did you ask their permission, either
12   before or after, to record them?
13         A.    No.
14         Q.    Do you know whether you violated the
15   terms of your own Planet Fitness contract to
16   conduct this surveillance inside a private
17   facility?
18         A.    No.
19         Q.    What were you -- I take it, just by
20   the shape of the camera footage, that the -- you
21   were using a phone of some kind to record?
22         A.    Correct.
23         Q.    Okay.  Inside the Planet Fitness.
24              By the way, there's a --
25   there's a jump here.  It looks like -- not a jump.

LE'ROY KELLY, II

1    A.    Yes.

2    Q.    In doing that, did you agree that you

3  would not take video or still photos of other

4  members using the gym?

5              MR. MARCUS:  Objection to the

6    form.

7              But you can answer.

8              MR. WIETZKE:  What's the

9    objection to form?

10              MR. MARCUS:  It presupposes

11  that there's something in the contract with

12  regard to permission to record anybody.

13              MR. WIETZKE:  No, I'm literally

14  asking him did he agree.  I don't presuppose

15  anything.

16              MR. MARCUS:  Do you understand

17  the question, Mr. Kelly?

18              THE WITNESS:  I don't -- was --

19  I understand the question.  I just was

20  unaware that any of that was in the

21  contract.  I can't remember if it is or not.

22  BY MR. WIETZKE:

23    Q.    What --

24    A.    Because I -- sorry.  I signed that --

25  my Planet Fitness membership so long ago, so the

2E

**LE'ROY KELLY, II**

1    details of what was in the actual contract -- in

2    the contact I signed I can't really recall word

3    for word.

4         Q.    Fair enough.

5                    When did you join Planet

6    Fitness yourself?

7         A.    I joined Planet Fitness back in 2012.

8         Q.    Do you remember which -- which

9    facility you signed up at?

10        A.    Delran, New Jersey.

11        Q.    Spell that for me.

12        A.    D-E-L-R-A-N.

13        Q.    Oh.  So literally exactly like it

14   sounds.  Sorry.

15        A.    Yeah.

16        Q.    Have you continued to use that

17   particular facility since you signed up there?

18        A.    Not for a while.

19        Q.    Okay.  Now, the video that you took

20   inside of the Planet Fitness on February 19, '22,

21   did you use the camcorder that was assigned to you

22   by the company to capture that footage?

23        A.    No, I did not.

24        Q.    What did you use?

25        A.    I used the provided phone from my

2F

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

– – –

BELTON HAIG,                    :
                                :
            Plaintiff,          :
                                :   18 Civ. 12370
        vs.                     :   (WJM)(MF)
                                :
NATIONAL RAILROAD               :
PASSENGER CORP.,                :
                                :
            Defendant.          :


        Remote video conference deposition of

COLIN BURKE, taken on Monday, July 18, 2022, commencing

at 2:05 p.m. before Natalie J. Goldhill, a Professional

Reporter and a Notary Public.


        SUMMIT COURT REPORTING, INC.
    Certified Court Reporters and Videographers
  (215) 985-2400 * (800) 447-8648 * (609) 567-3315
            www.summitreporting.com

3A

**COLIN BURKE**

1  University.

2          Q.      What was your undergraduate work?

3          A.      English.  I have a B.A. in English.

4          Q.      Okay.  I respect that because I have

5  the same.

6          A.      Oh, from Rutgers?

7          Q.      No, I have a Bachelor's in English.  I

8  went to Kalamazoo College.  It's a real place.  Are

9  you a W-2 employee of VRC at this point?

10         A.      Yes.

11         Q.      Do you know why all of your

12  investigations have Prime Source Investigations as

13  the header when all of the work was actually done

14  after the merger with VRC?

15         A.      I don't know about that.

16         Q.      Did you get paid for your work for

17  Prime Source on an hourly, daily, or salary basis?

18         A.      Hourly.

19         Q.      All right.  What was your hourly rate?

20         A.      Currently, it's 29.50.  I believe at

21  the time it was $29.

22         Q.      Did you perform the surveillance of

23  Mr. Haig alone each time you did it?

24         A.      Yes.

25         Q.      Did you ever speak with anyone about

3B

**COLIN BURKE**

1   the assignment to perform surveillance on Mr. Haig

2   other than Mr. Marcus?

3           A.      I may have spoken to Ed.  I actually

4   don't know his last name, I just call him Ed.

5   Another investigator that was in a deposition, I

6   think.  I think I talked to Ed about this case.  I

7   don't remember -- I did, I did talk to Ed.  He said

8   that he got into the gym.  I did see some video of

9   the claimant in a gym.  I believe it was taken by

10  Ed.

11          Q.      Where did you see that video?

12          A.      I was reviewing the video today on

13  Prime Source's site.

14          Q.      All right.  So in preparation for

15  today's deposition, you went through the Track Ops

16  site to familiarize yourself with the work that had

17  been done with regard to Mr. Haig?

18          A.      Correct.

19          Q.      Okay.  That included looking at video

20  taken by other folks?

21          A.      I was just looking for the video that

22  I took, but Ed's video was attached to one of the

23  dates that I was looking at.  Again, I believe it's

24  his.  It was the gym video.

25          Q.      So you ended up looking at video done

3C

## ATTORNEY ETHICS GRIEVANCE FORM

### Please Type Or Print Legibly All Information

**A.    GRIEVANT: Mr./Mrs./Miss./Ms. (Circle One)**

| HAIG | BELTON | CLAY |
|------|--------|------|
| LAST NAME | FIRST | MIDDLE |

67 SALMON ROAD

| ADDRESS | STREET/P.O. BOX | |
|---------|-----------------|--|
| LANDING | N.J.    07850 | MORRIS |
| CITY | STATE    ZIP | COUNTY |

TELEPHONE:  DAY (862  ) 324-5838          EVENING (862  ) 324-5838

**B.    THE SPECIFIC LAWYER YOU ARE COMPLAINING ABOUT IS:**

| WIETZKE | MARC | |
|---------|------|--|
| LAST NAME (INCLUDE SR., JR., III, ETC.)    FIRST | | MIDDLE |

1205 FRANKLIN AVENUE

| OFFICE ADDRESS | STREET/P.O. BOX | |
|----------------|-----------------|--|
| GARDEN CITY | N.Y.    11530 | NASSAU COUNTY |
| CITY | STATE    ZIP | COUNTY |

(1)    IS THE SPECIFIC LAWYER COMPLAINED ABOUT YOUR LAWYER?        X YES ___ NO
(2)    IF SO, DOES THIS LAWYER STILL REPRESENT YOU?        ___ YES X NO
(3)    IF NOT, DO YOU HAVE A NEW LAWYER?        ___ YES X NO
(4)    IF SO, WHO IS YOUR NEW LAWYER? _____ N/A

**C.    THE TYPE OF CASE HANDLED BY THE LAWYER WAS: (CHECK ONE)**

| | | | | | |
|--|--|--|--|--|--|
| ___ | Admiral/Maritime | (V) | ___ | International Law | (I) |
| ___ | Adoption/Name Change | (A) | ___ | Juvenile Delinquency | (J) |
| ___ | Bankruptcy/Insolvency/Foreclosure | (B) | ___ | Labor | (L) |
| ___ | Collection | (H) | ___ | Landlord/Tenant | (Q) |
| ___ | Contract | (K) | ___ | Negligence (Personal Injury) Property Damage | (N) |
| ___ | Corporation/Partnership Law | (X) | ___ | Patent/Trademark/Copyright | (P) |
| ___ | Criminal, Quasi-Criminal and Municipal Court | (C) | ___ | Real Estate | (R) |
| ___ | Domestic Relations (Divorce, Support, Custody) | (D) | ___ | Small Claims Court | (S) |
| ___ | Estate/Probate | (E) | | | |
| ___ | Federal Remedies/Civil Rights | (F) | ___ | Tax | (T) |
| ___ | Government Agency Problems (Local thru Federal) | (G) | ___ | Workers' Compensation | (W) |
| | | | ___ | Other Litigation (specify) | (Y) |
| | | | | RAILROAD EMPLOYER INJURY | |
| ___ | Immigration/Naturalization | (M) | ___ | Other Non-Litigation (specify) | (Z) |

IS THE CASE HANDLED BY THE LAWYER STILL PENDING?        ___ YES    X NO

| (This Section for Secretary's Use Only) |
|-----------------------------------------|
| DOCKET NUMBER _____ DATE DOCKETED _____ |

| ** COMPLETE BOTH SIDES ** |
|---------------------------|

**D.**   **OTHER RELATED COMPLAINTS OR LITIGATION:**

(1)   Have you filed a complaint regarding this matter with law enforcement authorities or any other state or federal agency?  _X_ YES _____ NO  If yes, please state:

Name of Agency: EEOC – (*ROXBURY TWP PD – MORRIS TWP PD*)

Contact Person: ROBERTO RODRIGUEZ _____ Date Filed: 12/01/2023

Result: RIGHT TO SUE LETTER ISSUED ON 5-02-2024  & (POLICE REPORTS FILED)

(2)   Is the matter you are complaining about the subject of a pending civil law suit? _____ YES _X_ NO
If yes, give name of Court _____ N/A

Docket Number: _____ N/A _____ County: _____ N/A _____

**E.**   **NATURE OF GRIEVANCE:**

State what the lawyer did or failed to do which may be unethical.  State all relevant FACTS including dates, times, places and names and addresses of important witnesses. Attach copies of important letters and documents.

Mr. Marc Wietzke commited egregious dereliction of duty, willful neglect and legal malpractice by

consciously refusing to exercise his due dilligence by not taking reasonable steps to investigate the "after

discovery evidence" I presented to him after my civil trial had concluded which was significant

enough that it would've materially changed the outcome of my case.

****PLEASE SEE ADDITIONAL SUPPORTING DOCUMENTS****

(Use Additional Sheets if Necessary)

**F.**   **INVESTIGATIVE CONFIDENTIALITY**

The Supreme Court of New Jersey has held that persons who file grievances "may speak publicly regarding the fact that a grievance was filed, the content of that grievance, and the result of the process."  Since disciplinary officials are required by *Rule* 1:20-9(h) to maintain the confidentiality of the investigation process and may neither speak about the case nor release any documents, until and unless a formal complaint is issued and served, you must also keep confidential any documents you may receive during the course of the investigation of your grievance.
To protect the integrity of the investigation process, we recommend that you as well as all witnesses, not speak about the case other than to disciplinary officials while the matter is under investigation. So long as you maintain the confidentiality of the investigation process, you have immunity from suit for anything you say or write to disciplinary officials.  However, the Supreme Court has stated that you "are not immune for statements made outside the context of a disciplinary matter, such as to the media or in another public forum." *R.M. v. Supreme Court of New Jersey*, 185 N.J. 208 (2005).

Date: 12/03/2024

s/ BELTON C. HAIG SR.   *Belton C. Haig Sr.*
Signature

PLEASE REVIEW THE PAMPHLET "INFORMATION ABOUT GRIEVANCE PROCEDURES AND DISCIPLINE OF LAWYERS" PROVIDED BY THE ETHICS SECRETARY.

   PLEASE NOTIFY DISTRICT SECRETARY OF DISABILITY ACCOMMODATION NEEDS.

OAE 03/06 - CN 10952

To whom it may concern,                                                                    December 3rd, 2024

Between October 30th, 2023, through November 6th, 2023, Mr. Marc Wietzke represented me in a jury trial against my employer AMTRAK- (NATIONAL RAILROAD PASSENGER CORPORATION) 18 Civ. 12370(WJM)(MF) during the trial one of the several private investigators hired on behalf of my employer to stalk and harass me by the name of Mr. Edward Belenger gave a perjurious testimony damaging my credibility resulting in a significant monetary loss for me at the conclusion of the trial. After the trial I had tried for two weeks via phone, text, and email to talk to Mr. Wietzke directly but was unsuccessful. However, on November 13, 2023, he finally replied to me via email. Mr. Wietzke informed me that he didn't think it would be "advantageous" to file an appeal because as he claimed, QUOTE: I am actually out of pocket almost $60,000 in expenses paid up front, and that is separate from not receiving any fee. I see only one angle at appeal, namely that it is inconsistent to find that you had an injury and suffered lost wages, but incurred no pain and suffering. I am unable to find case law at this point that says you can not make that argument, though case law against the argument does exist in federal circuit courts other than the 3rd Circuit. That said, I do not feel our likelihood of success on a motion for new trial, success on appeal, nor our prospects of obtaining more money in a new trial, warrant the additional investment in pursuing that appeal.

As for any suit against the surveillance company, I do not feel that is legally supported. The surveillance company had no duty to you or me or even Planet Fitness. To the extent that Planet Fitness might have a claim against the surveillance guy, it is theirs alone and would be a breach of contract. You cannot claim that breach and you would be unable to prove damages stemming from the breach in any event. I of course will provide you your file so you can pursue matters pro se or with new counsel. I will also be happy to bring anyone up to speed on things. Marc.

I didn't agree with his decision, so I did some investigating on my own and several months had gone by when I uncovered newly discovered material evidence that two individuals Mr. Edward Belenger and Mr. Leroy Kelley II who were hired on behalf of my employers as private investigators to follow me around, stalk, harass and greatly exacerbate my mental and physical disabilities would give false declarations both at each of their depositions and at a public trial committing material perjury and legal fraud during these official proceedings by deliberately and maliciously lying under oath to damage my credibility and ultimately influence the judge and jurors' decision on the monetary damages all felt I were intitled to receive. On two separate occasions both individuals perpetrated false light of privacy and unreasonable intrusion using false identifications and subterfuge to gain entry into a private facility to illegally video record me without my consent or that of the facility where I had a reasonable expectation of privacy. This is likely also a violation of HIPPA law(s) that these individuals illegally

captured and disseminated images of me at a public trial without my consent throughout periods of my medical recovery. These acts of intrusion were a violation of (NJLAD) & ADA, criminally unlawful and a violation of the facility's policies. I subsequently filed police report(s), complaints to the EEOC and brought this intrusion to the attention to the general manager of the facility where the invasion of privacy occurred providing the names of both individuals. After doing some investigating and running each of their names through company database, the manager informed me that not only were they in violation of company policy, but they have never been members of that club location or the franchise as a whole. Yet both lied under oath giving declarations that they were purported members knowing full well they weren't then or ever.

Because of this deceitful conduct on the part of both individuals whereby NJ Rev Stat § 2C:28-1 (2023)-Perjury, NJ Rev Stat § 2C:12-10 (2023)-Stalking, NJ Rev Stat § 2C:33-4 (2023)-Harassment. NJ Rev Stat § 2C:28-2 (2023)-False swearing. Further, neither of the two individuals retracted their perjurious statements at any time during any of these official proceedings. Under the direction of my employers, these two individuals, the defense lawyers and my employer committed intentional legal fraud by way of deception and extreme reckless disregard to gain an unfair advantage and deprive me of my legal right to a fair trial which has caused me irreparable harm, severe economic loss and has over exacerbated my anxiety, mental disorder, PTSD and physical disabilities.

On May 20th, 2024, I forwarded this new information of MATERIAL PERJURY and LEGAL FRAUD to Mr. Wietzke via email but received no response. In fact, since the last "direct" response via email on November 13th, 2023, I have never spoken to or interacted with Mr. Wietzke in any form of communication ever again. He has deliberately avoided contact with me and even after repeated phone, text and email attempts/requests to consult with him on new evidence I discovered which he still had a legal obligation to do, he simply chose not to. He had a legal and quite frankly moral obligation to forward these findings to the court for perjury charges against these individuals and a motion for reconsideration of the judges' decision but did absolutely nothing.

Because of this egregious dereliction of duty and willful neglect as my attorney, Mr. Wietzke should be found guilty of legal malpractice and disciplined accordingly. Mr. Wietzke made an overtly deliberate and conscious decision to blatantly disregard the new material evidence I presented to him and workers at his law firm via email and phone interactions which was significant enough that it could have materially changed the outcome of my case. He refused to take reasonable steps to investigate the new critical findings I presented to him, pursue perjury charges against the individuals who lied during their depositions and at trial or even file a motion to the presiding judge for a

"motion of reconsideration" or a new trial based on the "after discovered-evidence" once my civil trial had concluded.

Please refer to additional documents included to support my attorney grievance complaint against Mr. Marc Wietzke esq for legal malpractice.

Thank you for your time and consideration on this matter.

Respectfully,

Belton C. Haig Sr.

Mr. Belton C. Haig Sr.





Department of the Treasury
Internal Revenue Service
Andover, MA 01810-0010

**IRS Notice CP71A**

003606.624361.300256.21405 1 AV 0.545 702

BELTON C HAIG
67 SALMON RD
LANDING NJ 07850-1621

003606

November 4, 2024

# Reminder: You still owe a balance due for tax year 2015

## Amount due: $13,749.93

We're required to send you this annual reminder notice explaining the amount you still owe for your 2015 Form 1040 taxes. Your account will remain in non-collectable status until your financial situation changes.

## What you need to do now

If we notified you that we suspended enforced collection on your account because it would create a financial hardship and your financial situation has not changed, you don't need to do anything.

**Pay in full as soon as you can to minimize additional charges.** Your debt will continue to increase because interest and penalties (as applicable) are charged until you pay the full amount.

- **Pay your balance online** by visiting IRS.gov/Payments on a computer or mobile device. It's fast, secure, and you'll receive instant confirmation of your payment. Pay directly from your bank account, credit or debit card, or digital wallet.

- **Pay by mail.** Make your check or money order payable to United States Treasury. Be sure to attach the payment stub included in this notice when you mail your check or money order.



**You can access your account information online with Online Account (OLA).** Visit IRS.gov/Account to access your account online to view your amount owed, review your payment history, make a payment, get a transcript of your tax records, and view return information from your most recent tax year as originally filed.

## Options if you can't pay in full

If you can't pay the full amount you owe, consider the following options:

**Pay Over Time**
Make arrangements to pay over an extended time. If you owe less than $100,000, you can save time and money by visiting IRS.gov/PaymentPlans to apply for a payment plan. You can choose from a variety of plan options and get instant confirmation if you qualify.



**Offer in Compromise (OIC)**
An offer in compromise allows you to settle your tax debt for less than the full amount you owe. Use the OIC Pre-Qualifier tool at IRS.gov/Offers to see if you qualify, to calculate a preliminary offer amount, or to learn more about the program. Use of this tool does not guarantee offer acceptance.

**Temporarily Delay Collection**
If you're experiencing financial hardship, the IRS may temporarily delay collection until your situation improves. Visit IRS.gov/Delay to learn more.

Notice CP71A



003606



IRS

BELTON C HAIG
67 SALMON RD
LANDING NJ 07850-1621

| Notice | CP71A |
|---|---|
| Notice date | November 4, 2024 |

Amount due by November 25, 2024

Amount enclosed:                                                        $13,749.93

- Make your check or money order payable to the United States Treasury.
- Write your **Social Security number**, the **tax year** (2015), and the **form number** (1040) on your payment and mail this slip in with it.

INTERNAL REVENUE SERVICE
KANSAS CITY, MO 64999-0206

XXXXXXXXX UD UA7A D

ATTN: CHILD SUPPORT TAX OFFSET UNIT
MORRIS-PROBATION
PO BOX 910
MORRISTOWN    NJ 079630910

NOVEMBER 10, 2024

ATTN: CHILD SUPPORT TAX OFFSET UNIT
MORRIS-PROBATION
PO BOX 910
MORRISTOWN    NJ 079630910
PHONE(S)(877) 655-4371

** CONTACT ADDRESS ABOVE **

241031

T212  P2

085994

BELTON HAIG
67 SALMON RD
LANDING NJ  07850-1621

| SSN | CASE NUMBER | LOCAL ID | PAST DUE AMOUNT CLAIMED |
|---|---|---|---|
| ***-**-**** | CS91139777A | 027 | $14,273.00 (NON-TANF) |

The agency identified above has determined that you owe past-due child and/or spousal support.  Our records show that you owe at least the amount shown above.  If your case was submitted to the United States Department of the Treasury for collection in the past, this amount is subject to collection at any time by Administrative Offset and/or Federal Tax Refund Offset.  If your case has not already been submitted to the United States Department of the Treasury and you do not pay in full within 30 days from the date of this notice, this amount will be referred for collection by Administrative Offset and/or Federal Tax Refund Offset.  Under Administrative Offset (31 U.S.C.3716), certain Federal payments that might otherwise be paid to you will be intercepted, either in whole or in part, to pay past-due child and/or spousal support.  Under Federal Tax Refund Offset (42 U.S.C.664;26 U.S.C.6402), any Federal Income Tax Refund to which you may be entitled will be intercepted to satisfy your debt. The amount of your past-due support will also be reported to consumer reporting agencies.

If you owe or owed arrearages of child support in an amount exceeding $2,500, the agency identified above will certify your debt to the State Department pursuant to 42 USC 654(31).  Once you are certified, the Secretary of State will refuse to issue a passport to you, and may revoke, restrict or limit a passport that was previously issued.

Your debt will remain subject to Federal Tax Refund Offset, Administrative Offset, and/or passport certification until it is paid in full.  Important:  If you owe current support, any further arrears accruing due to payments missed may be added to your debt and will be subject to collection by Federal Tax Refund Offset and/or Administrative Offset now or in the future without further notice.  To determine additional amounts owed or the total amount past-due which the agency has submitted for collection, you may contact us at the address or phone number listed above.

You have a right to contest our determination that this amount of past-due support is owed, and you may request an administrative review.  To request an administrative review, you must contact us at the address or phone number listed above within 30 days of the date of this notice.  If your support order was not issued in our state, we can conduct the review or, if you prefer, the review can be conducted in the state that issued the support order.  If you request, we will contact that state within 10 days after we receive your request and you will be notified of the time and place of your administrative review by the state that issued the order.  All requests for administrative review, or any questions regarding this notice or your debt, must be made by contacting the agency identified above.

If you are married, filing a joint income tax return, and you incurred this debt separately from your spouse, who has no legal responsibility for the debt and who has income and withholding and/or estimated tax payments, your spouse may be entitled to receive his or her portion of any joint Federal Tax Refund.  If your spouse meets these criteria, he or she may receive his or her portion of the joint refund by filing a Form 8379 – Injured Spouse Claim and Allocation.  Form 8379 should be attached to the top of the Form 1040 or 1040A when you file, or filed according to other instructions as indicated on the Form 8379.

EEOC Form 5 (11/09)

| # CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC  FEPA | 524-2024-00515 |

| New Jersey Division On Civil Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| I Name (indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.) | Home Phone | Year of Birth |
|---|---|---|
| Mr. Belton C. Haig Sr. | 862-324-5838 | 1968 |

Street Address

67 Salmon Road

LANDING, NJ 07850

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| ARAMARK AMTRAK | 501+ Employees | (267) 519-1391 |

Street Address

3358 Tremley Point Rd.

Linden, NJ 07036

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address                              City, State and ZIP Code

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| Age, Disability, Race, Retaliation | Earliest  10/23/2016      Latest  04/05/2024     Continuing Action |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On January 2016, I was hired as a Communications and Signals Helper by the above-named employer. Respondent is aware of my disability. Since 2018, I have requested sedentary work as a reasonable accommodation due to my disability, but Respondent has blocked me from applying to a new job. Respondent has also subjected me to surveillance and refused to address my complaints about my treatment.

I believe I was discriminated against due to my race (African American), in violation of the Title VII of the Civil Rights Act of 1964, as amended. I believe I was discriminated against due to my age (55), in violation Age Discrimination Employment Act of 1967, as amended. I believe I was discriminated against due to my disability and in retaliation against due to engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.  **Digitally Signed By: Mr. Belton C. Haig Sr.**  **04/06/2024**            *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT   SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE  *(month, day, year)* |



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Newark Area Office**
283-299 Market St, Suite 1703
(862) 338-9410
Website: www.eeoc.gov

## CONFIDENTIALITY AGREEMENT

**EEOC NUMBER: 524-2024-00515**

1. I agree to participate voluntarily in mediation in an effort to resolve the charge(s) filed with the EEOC.

2. I agree that all matters discussed during the mediation are confidential, unless otherwise discoverable, and cannot be used as evidence in any subsequent administrative or judicial proceeding. Confidentiality, however, will not extend to threats of imminent physical harm or incidents of actual violence that occur during the mediation.

3. Any communications between the ADR Coordinator and the mediator(s) and/or the parties are considered dispute resolution communications with a neutral and will be kept confidential.

4. I agree not to subpoena the mediator(s) or compel the mediator(s) to produce any documents provided by a party in any pending or future administrative or judicial proceeding. The mediator(s) will not voluntarily testify on behalf of a party in any pending or future administrative or judicial proceeding. I further agree that the mediator(s) will be held harmless for any claim arising from the mediation process.

5. Mediation sessions will not be recorded or transcribed by the EEOC, the mediator or any of the participants. Information including records or documents generated during mediation will be kept confidential. Mediators have been instructed to destroy personal notes (those not shared with any party) at the conclusion of the mediation of the charge. Parties or their representatives are not prohibited from retaining their own notes. However, the EEOC will not maintain any such notes or records as part of its record keeping procedures.

6. In the event a mediation session(s) is conducted via telephone or video conferencing, I agree that all participants to such mediation session(s) or those that are otherwise present for the remote mediation, must identify themselves at the beginning of the mediation session and sign this Confidentiality Agreement. I understand that no one else may be present in the location away from the convening mediator unless their names and titles and/or roles are disclosed to the convening mediator and have signed the Confidentiality Agreement.

7. If a settlement is reached by all the parties, the agreement shall be reduced to writing and when signed shall be binding upon all parties to the agreement. If the charge(s) is not resolved through mediation, it is understood by the parties that the charge(s) will be transferred to the investigative unit for further processing.

**Digitally Signed By: Mr. Belton C. Haig**

04/22/2024

_____

Charging Party



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Washington Field Office**
131 M Street, NE Fourth Floor, Suite 4NWO2F
Washington, DC 20507
(800) 669-4000
Website: www.eeoc.gov

Mr. Belton C. Haig Sr.

Re: Mr. Belton C. Haig Sr. v. ARAMARK AMTRAK
EEOC Charge Number: 524-2024-00515

## NOTICE OF TRANSFER OF Charge of Discrimination

This is to notify you that the above-referenced Charge of Discrimination has been transferred to the Newark Area Office for Processing. Please make all future contact regarding this charge to:

Newark Area Office
283-299 Market St Suite 1703
Newark, NJ 07102
Phone: (862) 338-9410
Email: NEWAACT@EEOC.GOV

On Behalf of the Commission:

Digitally Signed By:Mindy E. Weinstein
04/10/2024

Mindy E. Weinstein
Director



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Newark Area Office
283-299 Market St, Suite 1703
Newark, NJ 07102
(862) 338-9410
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/02/2024

**To:** Mr. Belton C. Haig Sr.
67 Salmon Road
LANDING, NJ 07850
Charge No: 524-2024-00515

EEOC Representative and email:     ROBERTO RODRIGUEZ
Investigator
roberto.rodriguez@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 524-2024-00515.

On behalf of the Commission,

**JOHN WALDINGER**

Digitally signed by JOHN WALDINGER
Date: 2024.05.02 15:43:05 -04'00'

John Waldinger
Area Office Director

## LANDMAN CORSI BALLAINE & FORD P.C.

A NEW YORK PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

**ALEXANDER MARCUS**
ASSOCIATE
EMAIL: amarcus@lcbf.com

ONE GATEWAY CENTER
22nd FLOOR
NEWARK, NJ 07102-5311
TELEPHONE (973) 623-2700
FACSIMILE (973) 623-1496
www.lcbf.com

120 Broadway
New York, NY 10271
Tel: (212) 238-4800

1617 JFK Boulevard
Philadelphia, PA 19103
Tel: (215) 561-8540

April 4, 2022

**Via Guaranteed Subpoena**
Planet Fitness
275 NJ-10 East
Succasunna, NJ 07876

> Re:   **Belton Haig v. National Railroad Passenger Corp.**
>        **Civil Action No.: 2:18-cv-12370**

Dear Sir/Madam:

This office represents defendant National Railroad Passenger Corp., ("defendant"), in the above-referenced matter, a case now pending in the District Court for the District of New Jersey.

Enclosed please find defendant's Subpoena to produce documents, information, or objects in this matter. Please be advised that production of the records will be a sufficient response to the requirements of the subpoena, and that your appearance at our offices is not required.

Please be advised that no evidence should be released or produced until the date specified on this subpoena. Moreover, if you are notified that a motion to quash the subpoena has been filed, you should not produce or release the subpoenaed evidence unless ordered to do so by the Court or the release is consented to by all parties to the action.

If you have any questions, please do not hesitate to contact us. Thank you for your cooperation in this matter.

Very truly yours,

*/s/ Alexander Marcus*
Alexander Marcus

AM/sd
Encls.

cc: Marc Wietzke, Esq. (w/ encls.)

4864-6666-6253v.1

+AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

## UNITED STATES DISTRICT COURT
### for the
### District of New Jersey

| | | |
|---|---|---|
| BELTON HAIG, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 2:18-cv-12370 (WJM-MF) |
| NATIONAL RAILROAD PASSENGER CORP., | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Planet Fitness

*(Name of person to whom this subpoena is directed)*

☑ *Production:* YOU ARE COMMANDED of all gym records including member information, attendance, correspondence and billing records. As well as any other documents and information in your possession regarding Belton Haig (Date of Birth: 11/04/1968; Social Security Number: xxx-xx-3146).

| Place:<br>Landman Corsi Ballaine & Ford P.C., One Gateway Center, 22ND Floor, Newark, New Jersey 07102 | Date and Time:<br>On or before April 25, 2022 at 10 o'clock in the forenoon |
|---|---|

☐ *Inspection of Premises:* YOU ARE COMMANDED to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: April 4, 2022

CLERK OF COURT

OR

_____          /s/ Alexander Marcus
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *National Railroad Passenger Corp.* who issues or requests this subpoena, are: *Alexander Marcus., Landman Corsi Ballaine & Ford P.C. One Gateway Center, 22nd Floor, Newark, NJ 07102. amarcus@lcbf.com, (973) 623-2700.*

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Marie-Ann Greenberg, MAG-1284
Marie-Ann Greenberg, Standing Trustee
30 TWO BRIDGES ROAD
SUITE 330
FAIRFIELD, NJ 07004-1550
973-227-2840
Chapter 13 Standing Trustee

IN RE:
BELTON CLAY HAIG, SR.

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE**

**Chapter 13 Case No.: 19-31462JKS**

**HEARING DATE: 3/28/2024 at 10:00 am**

**ORAL ARGUMENT REQUESTED**

RUSSELL L LOW ESQ
LOW & LOW ESQS
505 MAIN STREET, SUITE 304
HACKENSACK, NJ 07601

BELTON CLAY HAIG, SR.
67 SALMON ROAD
LANDING, NJ 07850

## NOTICE OF MOTION TO DISMISS PETITION

Marie-Ann Greenberg, Chapter 13 Standing Trustee, has filed papers with the Court for an Order Dismissing this case.

**<u>Your rights may be affected.</u> You should read these papers carefully and discuss them with your attorney, if you have one, in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to grant the Order, or if you want the court to consider your views on the motion, then on or before seven (7) days before the scheduled hearing date of 03/28/2024, you or your attorney must:

File a **WRITTEN RESPONSE** in opposition to this motion explaining your position and send it to:

> US Bankruptcy Court
> Office of the Clerk
> 50 Walnut Street, Third Floor
> Newark, NJ 07102
> **and**
> Marie-Ann Greenberg
> Chapter 13 Standing Trustee
> 30 Two Bridges Road
> Suite 330
> Fairfield, NJ 07004-1550

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

The hearing is scheduled to be held on 03/28/2024 at 10:00 am in the courtroom of Honorable Judge JOHN K. SHERWOOD, at US Bankruptcy Court, 50 Walnut Street, Third Floor, D, Newark, NJ 07102.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter the order granting relief.

Marie-Ann Greenberg, Esquire
Chapter 13 Standing Trustee

Dated:  February 28, 2024

By:   /S/Marie-Ann Greenberg
Marie-Ann Greenberg, Esquire

# Low & Low, LLC

## Loan Modification Department

505 Main St. Suit 304
Hackensack, NJ 07601
Phone: 201-343-4840 Fax: 201-880-4010
Yolanda@lowbankruptcy.com
www.LowBankruptcy.com

# INVOICE

**INVOICE No.:** 26140
**DATE:** March 26, 2024

**SERVICES:** Loan Modification Application

Mr. Belton Haig
67 Salmon Road
Landing, NJ 07850

| Description | Amount |
|---|---|
| Services rendered for an application to modify your existing mortgage loan. | $3,750.00 |

Services include but are not limited to, analysis of your existing mortgage, document collection, preparation of lender's application, continual production of documents for submission of application, and negotiations with the lender.

**This firm DOES NOT guarantee that your lender will modify your existing mortgage.**

| Total | Amount Due $ 0.00 |
|---|---|

Make all checks payable to Low & Low, LLC.

**Loan Modification Application has already to been sent to the lender, however, full payment is due now.**

If you have any questions concerning this invoice, please contact Yolanda Veloz, Yolanda@lowbankruptcy.com



**SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
3RD FLOOR
1100 RAYMOND BLVD
NEWARK, NJ 07102-9801

Date: September 05, 2023

Belton Clay Haig
67 Salmon Road
Landing, NJ 07850

## Notice of Decision — Fully Favorable

I carefully reviewed the facts of your case and made the enclosed fully favorable decision. Please read this notice and my decision.

Another office will process my decision. That office may ask you for more information. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

### If You Disagree With My Decision

If you disagree with my decision, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter. The form is available at https://www.ssa.gov/forms/ha-520.html. Please write the Social Security number associated with this case on any appeal you file. You may call (800) 772-1213 with questions.

Please send your request to:

Social Security Administration
**Office of Appellate Operations**
**6401 Security Blvd**
**Baltimore, MD 21235-6401**

Form HA-L76 (07-2023)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

economy and as actually performed. In comparing the claimant's residual functional capacity with the physical and mental demands of the claimant's past relevant work, the undersigned has determined the claimant is not able to perform this past relevant work as actually or generally performed, based on the testimony of the vocational expert.

**7.    The claimant was an individual closely approaching advanced age on the established disability onset date (20 CFR 404.1563).**

**8.    The claimant has at least a high school education (20 CFR 404.1564).**

**9.    The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).**

If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. To determine the extent to which the claimant's additional limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors there are no jobs in the national economy that the individual could perform.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, a finding of "disabled" is appropriate under the framework of the above-cited rule.

**11.    The claimant has been under a disability as defined in the Social Security Act since October 8, 2020, the alleged onset date of disability (20 CFR 404.1520(g)).**

<u>DECISION</u>

Based on the application for a period of disability and disability insurance benefits protectively filed on November 10, 2020, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since October 8, 2020.

/s/ *Theresa Merrill*
_____
Theresa Merrill
Administrative Law Judge

September 05, 2023
_____
Date



In an August 2, 2020 report, treating source Dr. Nadia Matin stated that the claimant has been unable to resume any type of gainful employment due to his physical and mental impairments (Exhibit B11F, p. 3).

The undersigned finds that Dr. Matin's opinion is partially persuasive. Dr. Matin did not provide a function-by-function assessment of the claimant's limitations, but she is a long-time treating source, and her opinion that the claimant is disabled is consistent with the overall record, given the claimant's chronic pain despite 3 surgeries, depression, anxiety, and panic attacks.

The undersigned finds that the claimant has the following degree of limitation in the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself.

Based on the above, the undersigned finds that the claimant has the following residual functional capacity: The claimant can perform light work, with the following limitations: The claimant can stand and/or walk 4 hours in an 8-hour day. The claimant is able to occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant is able to occasionally balance and stoop, but can never kneel, crouch, or crawl. The claimant is able to occasionally reach overhead with the right upper extremity (RUE), but is unable to reach overhead with the left upper extremity (LUE). The claimant is able to frequently push/pull with the RUE, and is able to occasionally push/pull with the LUE. The claimant is able to occasionally perform handling, fingering, and feeling with the LUE. The claimant is able to occasionally push/pull with the right lower extremity (RLE) and is able to occasionally operate foot controls with the RLE. The claimant must avoid unprotected heights and moving mechanical parts. The claimant is able to understand, remember, and carry out simple instructions, and is able to perform work where specific production rates are not required. The claimant is able to tolerate occasional contact with supervisors and is able to adapt to routine changes in the workplace that are occasional. Due to lapses in concentration and/or the need for unscheduled breaks, the claimant would be off task 5% of the day. Due to his impairments, the claimant would be absent 1x per month.

**6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The vocational expert testified that the claimant has past relevant work as a Cable TV Line Technician (DOT 821.261-010, heavy, SVP 6); and a Signal Maintenance Helper (DOT 822.684-018, heavy, SVP 3). As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period (Exhibit B10D).

Having been asked to assume a person with the same age, education, and work experience as the claimant, and a residual functional capacity as stated in the finding immediately prior to this one, the vocational expert testified that such an individual would be unable to perform the Cable TV Line Technician and Signal Maintenance Helper jobs as generally performed in the national





May 8, 2020
BELTON CLAY HAIG
67 SALMON ROAD
LANDING NJ 07850

# We made a decision on your VA benefits.

Dear Belton Haig:

This letter will guide you through the information you should know and steps you may take now that VA has made a decision about your benefits.

Please see the enclosed rating narrative for the evidence considered.

Entitlement to individual unemployability is moot.

## Your Benefit Information:

- Basic eligibility to Dependents' Educational Assistance is established from March 27, 2020.
- Evaluation of major depressive disorder, recurrent, severe with paranoid psychotic features, which is currently 70 percent disabling, is increased to 100 percent effective March 27, 2020.

Your combined rating evaluation is:

| Combined Rating Evaluation | Effective Date |
|---|---|
| 30% | May 2, 1989 |
| 50% | Apr 16, 2008 |
| 70% | Feb 27, 2015 |
| 70% | Jun 17, 2015 |
| 100% | Mar 27, 2020 |

## How VA Combines Percentages

If you have more than one condition, VA will combine percentages to

**We have included with this letter:**
1. Explanation of Payment
2. Additional Benefits
3. Where to Send Written Correspondence
4. VA Form 20-0998
5. Rating Decision

**Contact information:**
Web: www.vets.gov
Phone: 1-800-827-1000
TDD: 711
To send questions online: visit https://iris.custhelp.com/

**Social Media:**
Twitter: @VAVetBenefits
Facebook: www.facebook.com/VeteransBenefits

**Your representative:**
You appointed DISABLED AMERICAN VETERANS as your accredited representative. They have also received a copy of this letter.

They can help you with any questions you have about your claim.

If you or someone you know is in crisis, call the *Veterans Crisis Line* at 1-800-273-8255 and press 1.





**DEPARTMENT OF VETERANS AFFAIRS**
Veterans Benefits Administration
Regional Office

**BELTON HAIG**

**VA File Number**
**30 308 717**

**Represented By:**
**DISABLED AMERICAN VETERANS**
**Rating Decision**
**05/07/2020**

## INTRODUCTION

The records reflect that you are a Veteran of the Peacetime. You served in the Navy from August 17, 1987 to January 6, 1989. You filed a claim for increased evaluation that was received on March 27, 2020. Based on a review of the evidence listed below, we have made the following decision(s) on your claim.

## DECISION

1. Evaluation of major depressive disorder, recurrent, severe with paranoid psychotic features, which is currently 70 percent disabling, is increased to 100 percent effective March 27, 2020.

2. Basic eligibility to Dependents' Educational Assistance is established from March 27, 2020.

3. Entitlement to individual unemployability is moot.

## EVIDENCE



BELTON HAIG
30 308 717
2 of 3

- VA Form 21-8940, Veteran's Application For Increased Compensation Based On Unemployability, received March 27, 2020
- VA letter concerning your claim, dated April 8, 2020
- Private treatment records from New Jersey Imaging Network received April 14, 2020
- Private treatment records from Summit Medical Group received April 14, 2020
- Private treatment records from University Spine Center received April 16, 2020
- VA Form 21-4192, Request For Employment Information in Connection With Claim For Disability Benefits, (2), received April 24, 2020
- Mental Disorders (other than PTSD and Eating Disorders) Disability Benefits Questionnaire Conducted by Veteran Evaluation Services, on April 16, 2020
- East Orange VAMC treatment records from October 16, 2017 to April 28, 2020

## REASONS FOR DECISION

### 1. Evaluation of major depressive disorder, recurrent, severe with paranoid psychotic features currently evaluated as 70 percent disabling.

The evaluation of major depressive disorder, recurrent, severe with paranoid psychotic features is increased to 100 percent disabling effective March 27, 2020. (38 CFR 4.1, 38 CFR 3.400)

The effective date of this grant is March 27, 2020. Entitlement to an increased evaluation has been established from the date the claim was received. When an increased evaluation is granted based on VA medical evidence showing an increase in disability after the date the claim was received, the effective date of the increase is the date the claim was received. (38 CFR 3.400)

We have assigned a 100 percent evaluation for your depressive disorder with paranoid psychotic features based on:
- Suspiciousness
- Depressed mood
- Near-continuous depression affecting the ability to function independently, appropriately and effectively
- Disturbances of motivation and mood
- Chronic sleep impairment
- Near-continuous panic affecting the ability to function independently, appropriately and effectively
- Total occupational and social impairment
- Difficulty in adapting to stressful circumstances
- Difficulty in adapting to work
- Inability to establish and maintain effective relationships
- Difficulty in adapting to a worklike setting
- Anxiety
- Difficulty in establishing and maintaining effective work and social relationships

The overall evidentiary record shows that the severity of your disability most closely approximates the criteria for a 100 percent disability evaluation. (38 CFR 4.7, 38 CFR 4.126)



BELTON HAIG
30 308 717
3 of 3

This is the highest schedular evaluation allowed under the law for major depressive disorder. (38 CFR 4.125, 38 CFR 4.126, 38 CFR 4.130)

There is no evidence of record that shows that you are unable to manage your financial affairs. (38 CFR 3.353)

## 2. Eligibility to Dependents' Educational Assistance under 38 U.S.C. Chapter 35.

Eligibility to Dependents' Educational Assistance is derived from a veteran who was discharged under other than dishonorable conditions; and, has a permanent and total service-connected disability; or a permanent and total disability was in existence at the time of death; or the veteran died as a result of a service-connected disability. Also, eligibility exists for a serviceperson who died in service. Finally, eligibility can be derived from a service member who, as a member of the armed forces on active duty, has been listed for more than 90 days as: missing in action; captured in line of duty by a hostile force; or forcibly detained or interned in line of duty by a foreign government or power. (38 USC Ch. 35, 38 CFR 3.807)

Basic eligibility to Dependents' Education Assistance is granted as the evidence shows you currently have a total service-connected disability, permanent in nature. (38 USC Chapter 35, 38 CFR 3.807)

Basic eligibility to Dependents' Educational Assistance is established from March 27, 2020, the day entitlement arose. (39 CFR 3.400)

## 3. Entitlement to individual unemployability.

Entitlement to individual unemployability is moot because your service-connected disabilities are evaluated as 100 percent disabling and no potential entitlement to an earlier effective date for a total disability evaluation based on a grant of individual unemployability is warranted by the evidence of record.

## REFERENCES:

Title 38 of the Code of Federal Regulations, Pensions, Bonuses and Veterans' Relief contains the regulations of the Department of Veterans Affairs which govern entitlement to all veteran benefits. For additional information regarding applicable laws and regulations, please consult your local library, or visit us at our website, www.va.gov.



+AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action.

## UNITED STATES DISTRICT COURT
### for the
### District of New Jersey

| | |
|---|---|
| BELTON HAIG, | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No. 2:18-cv-12370 (WJM-MF) |
| NATIONAL RAILROAD PASSENGER CORP., | ) |
| *Defendant* | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Planet Fitness

*(Name of person to whom this subpoena is directed)*

☑*Production:* YOU ARE COMMANDED of all gym records including member information, attendance, correspondence and billing records. As well as any other documents and information in your possession regarding Belton Haig (Date of Birth: 11/04/1968; Social Security Number: xxx-xx-3146).

| Place: | Date and Time: |
|---|---|
| Landman Corsi Ballaine & Ford P.C., One Gateway Center, 22ND Floor, Newark, New Jersey 07102 | On or before April 25, 2022 at 10 o'clock in the forenoon |

☐ *Inspection of Premises:* YOU ARE COMMANDED to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached — Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: April 4, 2022

### CLERK OF COURT
OR

_____          /s/ Alexander Marcus
*Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *National Railroad Passenger Corp.* who issues or requests this subpoena, are: *Alexander Marcus., Landman Corsi Ballaine & Ford P.C., One Gateway Center, 22nd Floor, Newark, NJ 07102. amarcus@lcbf.com. (973) 623-2700.*

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# LANDMAN CORSI BALLAINE & FORD P.C.
### A NEW YORK PROFESSIONAL CORPORATION

**JOHN A BONVENTRE**
MEMBER

EMAIL: Jbonventre@lcbf.com

**ATTORNEYS AT LAW**

ONE GATEWAY CENTER
22ND FLOOR
NEWARK, NJ 07102-5311
TELEPHONE (973) 623-2700
FACSIMILE (973) 623-4496
www.lcbf.com

120 Broadway
New York, NY 10271
Tel: (212) 238-4800

1617 JFK Boulevard
Philadelphia, PA 19103
Tel: (215) 561-8540

December 23, 2022

*__Via Email__*

Marc Wietzke, Esq.
1205 Franklin Avenue
Garden City, NY 11530

Re:    **Belton Haig vs. National Railroad Passenger Corporation**
       **Civil Action No.: 2:18-cv-12370-WJM-JSA**

Dear Mr. Wietzke:

As you know, we represent defendant National Railroad Passenger Corporation ("Amtrak") in the above-referenced matter. Amtrak hereby formally extends the following settlement offer to plaintiff to resolve any and all of his claims against Amtrak.

Specifically, Amtrak offers a gross settlement in the amount of **$850,000**, minus any and all liens and advances, to resolve all claims against Amtrak in their entirety, and in exchange for the execution of a General Release (including a confidentiality agreement not to advertise, report or publish the settlement, as was agreed upon in the Warren matter), Stipulation of Dismissal with prejudice, and the execution of an agreement not to return to work for Amtrak.

Please be advised that Amtrak will hold this offer open until close of business on **December 30, 2022.** If not accepted by that date and time, all offers will be withdrawn, and we will prepare for trial. Thank you for your attention to this matter.

Best wishes for a happy and healthy holiday for you and your family.

Very truly yours,

*/s/ John Bonventre*
John Bonventre

4885-2246-5094v.1

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BELTON HAIG

     Plaintiff,

  -vs-

NATIONAL RAILROAD PASSENGER CORP.

     Defendant

**JUDGMENT ORDER**

Civil Action 2:18-12370-WJM-JSA

This action having come before the Court for trial by jury, the issues having been tried and the jury having rendered its verdict;

It is on this _16_ day of _November_ 2023,

ORDERED that judgment be entered in favor of the plaintiff, BELTON HAIG, and against the defendant, NATIONAL RAILROAD PASSENGER CORP., in the amount of $62,932.00.

It is further ORDERED that the Clerk of Court is directed to close this case.

DATE: _11/16/23_

WILLIAM J. MARTINI, USDJ

If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

The hearing is scheduled to be held on 03/28/2024 at 10:00 am in the courtroom of Honorable Judge JOHN K. SHERWOOD, at US Bankruptcy Court, 50 Walnut Street, Third Floor, D, Newark, NJ 07102.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter the order granting relief.

Marie-Ann Greenberg, Esquire
Chapter 13 Standing Trustee

Dated: February 28, 2024            By:  /S/Marie-Ann Greenberg
                                          Marie-Ann Greenberg, Esquire

Marie-Ann Greenberg, MAG-1284
Marie-Ann Greenberg, Standing Trustee
30 TWO BRIDGES ROAD
SUITE 330
FAIRFIELD, NJ 07004-1550
973-227-2840
Chapter 13 Standing Trustee

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

IN RE:
BELTON CLAY HAIG, SR.

Chapter 13 Case No.: 19-31462JKS

HEARING DATE: 3/28/2024 at 10:00 am

ORAL ARGUMENT REQUESTED

RUSSELL L LOW ESQ
LOW & LOW ESQS
505 MAIN STREET, SUITE 304
HACKENSACK, NJ 07601

BELTON CLAY HAIG, SR.
67 SALMON ROAD
LANDING, NJ 07850

### NOTICE OF MOTION TO DISMISS PETITION

Marie-Ann Greenberg, Chapter 13 Standing Trustee, has filed papers with the Court for an Order Dismissing this case.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one, in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the Court to grant the Order, or if you want the court to consider your views on the motion, then on or before seven (7) days before the scheduled hearing date of 03/28/2024, you or your attorney must:

File a **WRITTEN RESPONSE** in opposition to this motion explaining your position and send it to:

US Bankruptcy Court
Office of the Clerk
50 Walnut Street, Third Floor
Newark, NJ 07102
            **and**
Marie-Ann Greenberg
Chapter 13 Standing Trustee
30 Two Bridges Road
Suite 330
Fairfield, NJ 07004-1550



BELTON CLAY HAIG SR.
67 SALMON ROAD
LANDING NJ 07850



CERTIFIED MAIL®

7022 1670 0003 1584 1900



Retail

U.S. POSTAGE PAID
FCM LG ENV
LANDING, NJ 07850
MAY 05, 2025

$13.86

07102

RDC 99

S2324N506214-04





U.S. DISTRICT COURT
FOR DISTRICT OF N.J.
50 WALNUT ST. ROOM 4015
NEWARK, N.J.

07102

XRAYED



RECEIVED
AT 8:30
MAY 09 2025
CLERK, U.S. DISTRICT COURT - DNJ

